### SMITH v. BEACH.

(Supreme Court, Appellate Division, Third Department. May 21, 1896.)

WATER RIGHTS—PROOF OF GRANT.

　　Defendant in an action for trespass in interfering with plaintiff's pond showed a right, by grant, to draw "one inch in diameter of water" from the pond. He had in actual use two pipes of that capacity, one known as the "fountain pipe," which had been in use for the prescriptive period, and the other known as the "upper pipe," the use of which had been only occasional and unknown to the owner of the pond. He claimed the upper pipe under the grant, and the fountain pipe by prescription. The first pipe, by which water was taken to defendant's premises, led to a house. Afterwards defendant's predecessor in title built a new house on the premises, and made a fountain nearly on the site of the old house, and then laid the fountain pipe to the fountain; and his widow testified that she had heard it mentioned that her husband had bought the right to lay the fountain pipe. *Held*, that the fountain pipe, and not the upper pipe, was the one to which defendant was entitled under the grant.

Appeal from special term, Tompkins county.

Action by Sarah M. Smith, administratrix, against Arad S. Beach, to recover damages—First, for the alleged acts of defendant in breaking down the bulkhead of a pond owned by plaintiff, and breaking and injuring the race way precipitating the waters of said pond on the lands of said plaintiff; and, second, for cutting and weakening the banks of the pond. Damages in the sum of $200 were demanded. From a judgment of $135.18, damages and costs, entered on a decision of the court, a jury trial having been waived, defendant appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

George E. Goodrich, for appellant.

Wm. Hazlitt Smith, for respondent.

LANDON, J. The defendant has shown the right, by grant, to draw "one inch in diameter of water" from Willow pond. He has in actual use two pipes each of about that capacity, and claims title to the second one by prescription. If the grant confers title to the use of the water through what is called the "upper pipe," then his title to the use of the water through what is now called the "fountain pipe" would seem to be good by prescription, since the use through the latter pipe has been sufficient in time, notoriety, and claim of right to make good such title. Not so, however, as to the "upper pipe." The use of that pipe has not been constant. or open, but occasional; and the fact that it led from the Willow

pond is not shown to have been known to the owner of the pond, the pipe being under ground, and its connection with the pond being rarely observable. Besides, if the pipe, at its place of discharge, had been observed by the owner of the pond, its supply might be attributed to a spring formerly open upon defendant's premises, but now dried up or covered over.

We think the learned trial judge was right in holding that the "fountain pipe" is the one secured to the defendant by grant. His remote grantor, Eddy, in 1833, had the right and privilege of taking water from the ditch or race way leading from said creek (i. e. Willow pond) to the cotton mill, in an aqueduct "one inch in diameter." The precise point from which the water is to be taken is not here specified. In 1840, Eddy conveyed to the Giles brothers, under whom the defendant holds as then conveyed, "the right and privilege of drawing one inch in diameter of water from the said pond or reservoir, between the first and second reservoirs." The "reservoirs" last mentioned probably means "watering places" in the margin of the pond, of which three are described in the same grant. In 1840 the fountain pipe did not exist, and the upper pipe is not shown to have existed. The only pipe through which water is shown to have been drawn led·from the spring before mentioned to an old house then on the premises. In 1842, Giles built a new house, and made a fountain nearly upon the site of the old house, and then he laid the fountain pipe to the fountain. We think the evidence of Mrs. Giles, widow of the Giles who laid the fountain pipe, justifies the inference that he did so in pursuance of his right under his deed from Eddy,—a right not used until then. Mrs. Giles, in her testimony, repeatedly speaks of hearing it mentioned that her husband had bought the right to lay the fountain pipe. As there is no valid evidence of such a purchase except that expressed in the deeds, we may assume that to be the purchase to which Mrs. Giles referred as the one under which the fountain pipe was laid. It is true that this pipe leads from the first watering place, instead of from between the first and second watering places; but the difference is slight, and after 50 years of practical location and acquiescence by the parties interested, the location should not be disturbed.

Confirmatory of this conclusion is the character of the fountain pipe. It is about three inches in diameter from the pond to the fountain, where the orifice of discharge is reduced to one inch; thus enabling the defendant to obtain what his grant confers, namely, "one inch in diameter of water," instead of water led through a pipe of one inch in diameter, which would be less. Mr. Giles having thus located the fountain pipe in pursuance of his rights under the deed, we may the more readily assume that the upper pipe, if it existed as early as 1842 (the testimony adduced to show which the learned trial judge disbelieved), was practically abandoned, and the new location adopted in its stead. The existence of the upper pipe was known only to a few, and its use rare and occasional. It was plugged up repeatedly. The practical abandonment of the upper pipe, and the practical location of the

fountain pipe, as the granted location, should not be disturbed after the acquiescence of so many years. The early intention should not be changed upon the slight evidence of the use of the upper pipe, notwithstanding its abandonment.

The judgment should be affirmed, with costs. All concur.